UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN LEE MORGAN,

                Plaintiff,

  v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Defendant.

Case No. 3:09-cv-05771-BHS-KLS

REPORT AND RECOMMENDATION

Noted for February 4, 2011

Plaintiff has brought this matter for judicial review of defendant's determination that he no longer is disabled, and therefore that he no longer is entitled to receive supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits for the Court's review the following Report and Recommendation, recommending that for the reasons set forth below, defendant's determination be affirmed.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff is a claimant who received SSI benefits based on disability as a child beginning August 1, 1996, due to chronic renal failure. See Tr. 19, 35-36. Plaintiff was eligible to receive

REPORT AND RECOMMENDATION - 1

disability benefits through the month preceding November 2006, the month in which he turned age 18. See Tr. 21. On September 1, 2007, after hearing was held before a disability hearing officer,[1] plaintiff was found to be no longer entitled to receive disability benefits as of August 1, 2007, under the rules for determining disability in adults. See Tr. 19, 21, 34, 54, 58-62, 65. That determination was upheld on reconsideration. See Tr. 19, 33.

At plaintiff's request, a hearing was held before an administrative law judge ("ALJ"), which was held on January 20, 2009, and at which plaintiff, represented by counsel, appeared and testified, as did plaintiff's mother and a vocational expert. See Tr. 19, 1037-82. On March 17, 2009, the ALJ issued a decision, in which he determined that plaintiff's disability had ended on August 1, 2007, and that plaintiff had "not become disabled again since that date," finding specifically in relevant part that he had the residual functional capacity to perform other jobs existing in significant numbers in the national economy.[2] See Tr. 19-30. Plaintiff's request for

---

[1] While plaintiff requested such a hearing, he failed to appear for it. See Tr. 58.

[2] The assessment of a claimant's residual functional capacity is used to determine whether a claimant is capable of performing his or her past relevant work and, if necessary, whether he or she can do other jobs. See Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. It is what the claimant "can still do despite his or her limitations," and is the maximum amount of work the claimant is able to perform. Id. In this case, with respect to plaintiff's residual functional capacity, the ALJ found as follows:

> **. . . since August 1, 2007, the claimant has had the residual functional capacity to lift and/or carry, including upward pulling, a maximum of 20 pounds and 10 pounds frequently with his dominant right upper extremity. With his left non-dominant upper extremity, he can lift and/or carry, including upward pulling, a maximum of 10 pounds. He can stand and/or walk (with normal breaks) for about 6 hours in an 8-hour workday and sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. Other than the restrictions described for lifting and/or carrying, he can push and/or pull (including operation of hand and/or foot controls) without limitations. He can frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl, but should avoid climbing ladders, ropes, or scaffolding. He has no manipulative, visual, or communicative limitations. He should avoid working around hazardous machinery or around heights. He retains the mental capability to adequately perform the mental activities generally required by competitive, remunerative work as follows: understand, remember, and carry out simple instructions; have the average ability to perform sustained work activities (i.e., can maintain attention, concentration, persistence, and pace) in an ordinary work setting on a regular and continuous basis (i.e., 8 hours a day for 5 days a week or an equivalent work schedule) within customary tolerances of employers' rules regarding sick leave and absence; can make judgments on simple,**

REPORT AND RECOMMENDATION - 2

1  review of the ALJ's decision was denied by the Appeals Council on October 26, 2009, making

2  the ALJ's decision defendant's final decision. <u>See</u> Tr. 6; 20 C.F.R. § 416.1481.

3       On December 17, 2009, plaintiff filed a complaint in this Court seeking judicial review of

4  defendant's final decision. <u>See</u> (ECF #1).  The administrative record was filed with the Court on

5  February 23, 2010. <u>See</u> (ECF #8).  The parties have completed their briefing, and thus this matter

6  is now ripe for judicial review and a decision by the Court.  Plaintiff argues defendant's decision

7  should be reversed and remanded for an award of benefits, because the ALJ erred in finding that

8  despite having a combination of severe impairments, he retained the residual functional capacity

9  to engage in substantial gainful activity.  For the reasons set forth below, the undersigned does

10 not agree the ALJ erred in determining plaintiff to be not disabled, and therefore recommends the

11 ALJ's decision be affirmed.

## DISCUSSION

     This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. <u>See</u> <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>See</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance. <u>See</u> <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational

---

     **work-related decisions; respond appropriately to supervision, coworkers, and work situations; and deal with changes all within a routine work setting.  He cannot deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process.**

Tr. 23 (emphasis in original).

REPORT AND RECOMMENDATION - 3

interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

> Plaintiff's argument in this case consists in relevant part of the following:
>
>       . . . the [ALJ] ignored probative evidence that sets forth a disability finding.
>       . . . the [ALJ] wrongfully discounted the severity of [plaintiff's] combined impairments because he applied circular logic to decide this matter. For example, while the unfavorable decision noted that some of [plaintiff's] symptoms from his kidney transplant were exacerbated by non-compliance with treatment, he did not address the fact that [plaintiff's] mental health impairments have contributed to his non-compliance.  Rather, the [ALJ] opined that [plaintiff's] mental health has been "stable and improved," based on [plaintiff's] self-report in July, 2007.  [Plaintiff's] self-report conflicts with the facts of his existence, which is isolated and greatly restricted.  For example, [plaintiff] has difficulty with sleep, has serious and ongoing conflict with family, and fails to attend to his basic hygiene or medication requirements.  The ALJ discounted these mental symptoms, which both [plaintiff] and his mother testified to at the hearing, and instead described [plaintiff] as "independent in all areas of his self-care," and described him as a very social young adult.
>       These findings, though possibly consistent with the physical RFC [residual functional capacity] evaluation assigning [plaintiff] to "light work," contradict the rest of the record, described above.  As such, they go against the weight of substantial evidence in this case . . .

(ECF #13, pp. 7-8).  The undersigned finds plaintiff's argument to be without merit.

First, it should be noted that a determination of impairment severity, which is made at step two of the sequential disability evaluation process, is merely a *de minimis* screening device used to dispose of groundless claims.[3] See Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Accordingly, the fact that the ALJ found plaintiff had severe impairments consisting of chronic

---

[3] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step of that process, the disability determination is made at that step, and the sequential evaluation process ends. Id.  At step two, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 416.920(a)(4)(iii), (c); see also SSR 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); see also SSR 85- 28, 1985 WL 56856 *3. An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work."  See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).

REPORT AND RECOMMENDATION - 4

kidney disease, status-post renal transplant in May 2005, as well as a probable learning disorder and a mood disorder (see Tr. 21), does not alone require a determination of disability, let alone a finding that there are significant, work-related limitations stemming therefrom.

Plaintiff, furthermore, primarily argues the ALJ erred in discounting the evidence in the record gleaned from plaintiff's own testimony and self-reports, as well as the testimony of his mother.  While plaintiff does summarize some of the objective medical evidence in the record, it all generally stems from well-prior to the date he was determined to no longer be disabled, and thus is of little, if any, relevance to the period at issue here.  See (ECF #13, pp. 3-6).  Plaintiff claims the ALJ failed to address the fact that his mental health impairments contributed to his medication non-compliance, but there is no objective medical evidence in the record to support that claim.  That is, none of his treating or other medical providers have indicated such.  Rather, it seems the non-compliance is, as the ALJ found, much more the result of his refusal to comply with recommended treatment for reasons that are unrelated to his mental health impairments.  See Tr. 720-21, 723, 725, 882, 884, 899, 904-07, 920-22, 927, 937, 976, 991.

It may be that plaintiff's behavior in this regard has been described as "oppositional and defiant" (Tr. 922), but again no medical source has opined or indicated that this is because of any kind of mental impairment, rather than his own choosing.  Instead, it seems that plaintiff is able to stay in compliance when he needs to.  See Tr. 921 (plaintiff reporting in mid-May 2008, that he remembered to take all of his medications when he recently went on two-day camping trip); 926 (same).  Plaintiff's further claim that the ALJ found him to be "stable and improved" based on his own-self report in July 2007, which he asserts "conflicts with the facts of his existence, which is isolated and greatly restricted" (ECF #13, p. 7), is incorrect as well.

First, a plain reading of the ALJ's decision clearly shows that he based his findings with

REPORT AND RECOMMENDATION - 5

respect to plaintiff's stability and improvement on the substantial evidence in the record overall, including both plaintiff's self-reports over time and the findings of his medical providers and the other medical source opinions contained therein. See Tr. 25-27.  The self-reports regarding daily activities, furthermore, show plaintiff has not been nearly as isolated, restricted or inactive as he is now asserting. See Tr. 729 ("'volunteering' at tow yard"); 869 ("posted numerous friends" on "'Myspace'"); 874 ("brought two computer towers home to work on" which "[h]e enjoys"); 884 ("[b]abysitting for neighbor ages 7 [months and] 3 [years]"); 915 ("[h]elping in Tow yard"); 918 ("[h]elping at [apartment complex] w/ some repairs – getting paid"); 921 ("did join some friends for a two-day camping trip"); 926 (same); 929 ("[v]isits friends," "[g]oes to Library," "up [un]til 0400 on computer"); 939 ("[v]ery busy/active running w/ friends, dogs"; "[s]tays up late talking w/ teens in [his apartment] complex"); 977 ("spends his days helping in the tow yard next to his parent's apartment building"); 990 ("[w]orking on home computer").

      The undersigned, furthermore, agrees with defendant that the ALJ gave valid reasons for discounting the self-reports and testimony of plaintiff and the testimony of his mother, none of which plaintiff has expressly challenged. See Carmicle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in its opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters on appeal not specifically and distinctly argued in opening brief ordinarily will not be considered). Questions of credibility are solely within the control of the ALJ. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination, and may not reverse a credibility determination where that determination is based on contradictory or

ambiguous evidence. Allen, 749 F.2d at 579-80.

That some of the reasons provided for discrediting a claimant's self-reports or testimony should properly be discounted does not render the ALJ's determination invalid, furthermore, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284. In discounting a claimant's credibility, the claimant's work record and observations of physicians, as well as other third parties regarding the nature, onset, duration, and frequency of symptoms, may be considered. See id.

In this case, the ALJ properly discounted plaintiff's credibility in part because his claims regarding the nature and severity of his mental and physical symptoms and limitations were not consistent with the objective medical evidence in the record. See Tr. 25-26; see also Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (determination that claimant's subjective complaints are inconsistent with clinical observations can satisfy clear and convincing

REPORT AND RECOMMENDATION - 7

requirement). The ALJ also properly discounted his credibility in part because, as noted above, he "engaged in activities that suggest[ed] greater mental and physical functioning capacity than [he] alleged." Tr. 26; see Smolen, 80 F.3d at 1284 and n.7. (ALJ may consider daily activities if claimant is able to spend substantial part of his or her day performing household chores or other activities that are transferable to work setting).

The ALJ further correctly discounted plaintiff's credibility in part because, again as noted above, his mental health symptoms had shown stability and improvement on medication. See Tr. 25; see also Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). Lastly, the ALJ discounted his credibility because his testimony at the hearing that he had suffered from hand tremors due to medications contradicted his denial of any problems therewith in May 2008. See Tr. 25. This too was a valid reason for not finding him to be fully credible regarding his subjective complaints and claims of disabling symptoms and limitations. See Smolen, 80 F.3d at 1284 (prior inconsistent statements concerning symptoms may be considered).

As for the testimony of plaintiff's mother, once more plaintiff has failed to set forth any specific reasons for challenging the fact that the ALJ gave only "some" weight thereto. Tr. 27. Lay testimony concerning a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though he or she does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample,

REPORT AND RECOMMENDATION - 8

694 F.2d at 642.

The ALJ addressed plaintiff's mother's testimony as follows:

> The undersigned gives some weight to [plaintiff's mother's] statements, but only to the extent that they are consistent with the record. First, although the claimant may have a learning disorder, cognitive tests administered in July indicate that he retains sufficient memory and intellectual skills to carry out at least simple tasks and perform some entry level position. Second, while the claimant has a history of depression, treatment records indicate that his symptoms have been well-controlled with medication. Finally, other than some minor exacerbations, the claimant's allograft function has been stable since August 2007.

Tr. 27. All of these reasons were valid and germane to plaintiff's mother, and, as such, the ALJ did not err in giving only some weight to her testimony. See Lewis, 236 F.3d at 511 (ALJ may discount lay testimony if it conflicts with medical evidence); Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with medical evidence constitutes germane reason); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence); but see Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009) (finding, without referring to or rejecting Bayliss and Vincent, that ALJ may not reject lay witness evidence merely because it is not supported by medical evidence).

Lastly, again while plaintiff has not specifically challenged the ALJ's findings regarding the objective medical evidence in the record, and accordingly on that basis alone those findings should be upheld, the undersigned does note that those findings are supported by the substantial evidence in the record. The ALJ has responsibility for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample, 694 F.2d at 642. In such cases, "the ALJ's conclusion must be upheld." Morgan, 169 F.3d at 601. Determining whether

REPORT AND RECOMMENDATION - 9

inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. In addition, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989). The ALJ, furthermore, "need not discuss *all* evidence presented" to him or her, but must only explain why "significant probative evidence has been rejected." Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original); see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

The ALJ in this case provided a detailed summary of the objective medical evidence in the record, and supported his findings in regard thereto with well-reasoned analysis. See Tr. 23-28. As noted above, while plaintiff has provided his own summary of the medical evidence in the record, which he asserts supports a finding of disability here, that evidence mostly details his condition prior to the relevant time period, i.e., the period for which he was determined to begin to no longer be disabled. Accordingly, plaintiff has not provided any valid basis for challenging the ALJ's findings in this area. Because plaintiff has failed to show the ALJ erred in evaluating the medical or other evidence in the record, he also has failed to show the ALJ erred in assessing his residual functional capacity, in finding him to be capable of performing other jobs existing in

REPORT AND RECOMMENDATION - 10

significant numbers in the national economy,[4] and therefore in determining him to be no longer disabled since August 1, 2007.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ properly concluded plaintiff was not disabled, and should affirm the ALJ's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **February 4, 2011**, as noted in the caption.

DATED this 21st day of January, 2011.

Karen L. Strombom
United States Magistrate Judge

---

[4] If a claimant is found to be unable to perform his or her past relevant work at step four of the sequential disability evaluation process as the ALJ did in this case given that plaintiff has no such work (see Tr. 28), at step five of that process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e).

REPORT AND RECOMMENDATION - 11